IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

PARKER R. MEADOR                                                          PLAINTIFF

                 v.                         Civil No. 11-2022

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                       DEFENDANT

**MEMORANDUM OPINION**

**I.**    **Factual and Procedural Background**

Plaintiff, Parker R. Meador, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

Plaintiff protectively filed his DIB and SSI applications on January 5, 2007, alleging disability as of September 1, 2006, due to obsessive compulsive disorder, anxiety, depression, neck and back pain, left knee pain, and dermatitis. Tr. 144, 186. On the alleged onset date, Plaintiff was thirty four years old with a GED. Tr. 82, 149, 215, 282, 367, 387. He has past work as a CNA and childcare worker. Tr. 82, 145-146, 215, 367.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 85-91, 96-99. At Plaintiff's request, an administrative hearing was held on December 9, 2008. Tr. 26-66. The ALJ rendered an unfavorable decision on June 3, 2009. Tr. 71-84. Subsequently, the Appeals Council denied Plaintiff's Request for Review on July 16, 2009. Tr. 1-3.

On August 12, 2009, Plaintiff filed an action in this court, which ultimately resulted in remand to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). *Meador v. Astrue*, No. 2:09-cv-02100-JRM (W.D. Ark 2009). On October 5, 2010, a second administrative hearing was held. Tr. 380-415. Plaintiff was present at the hearing and represented by counsel. The ALJ rendered an unfavorable decision on November 19, 2010, finding that Plaintiff was not disabled within the meaning of the Act. Tr. 355-368. Subsequently, the Appeals Council denied Plaintiff's Request for Review on July 16, 2009, thus making the ALJ's decision the final decision of the Commissioner. Tr. 418-420. Plaintiff now seeks judicial review of that decision.

**II.     Medical History**

Plaintiff has a history of anxiety, depression, back and neck pain, and dermatitis. A CT of Plaintiff's cervical spine, dated June 1, 2005, revealed a small focal right paracentral disc herniation at C4-5 and a mild to moderate broad-based disc bulge at C5-6 with some end-plate spurring at that level. Tr. 254. An MRI of Plaintiff's cervical spine, dated June 14, 2005, revealed small right paracentral C4 and C5 disc herniations. Tr. 599.

   A. Vista Health Psychiatric Clinic

On November 27, 2006, Plaintiff went to Vista Health Psychiatric Clinic for a psychiatric assessment. Tr. 205-212. Plaintiff reported social anxiety and compulsive behaviors. Tr. 205. On examination, Plaintiff appeared happy, cheerful, and appropriate. Tr. 209. Plaintiff's memory was intact and his thought processes were logical, coherent, and goal-directed. Tr. 209. Judgment and insight were intact. Tr. 210. Plaintiff's intelligence was estimated to be within the average range. Tr. 209. He was diagnosed with obsessive-compulsive disorder, social anxiety, and personality disorder not otherwise specified ("NOS"). Tr. 211. Plaintiff's Global Assessment of Functioning

("GAF") score was estimated at 50-55. Tr. 211. He received treatment from January 25, 2007, to May 31, 2007. Tr. 308-311.

 B. <u>Patricia J. Walz, Ph.D.</u>

On April 10, 2007, Plaintiff saw Patricia J. Walz, Ph.D., for a consultative mental evaluation. Tr. 214-219. He reported social anxiety, which he described as feeling like everyone was watching, critiquing, and judging him. Tr. 214. He also reported depression and recent suicidal ideation with no plan or attempt. Tr. 214. Plaintiff admitted to compulsive behaviors such as excessive hand washing, counting things, and rechecking locks. Tr. 214. He was currently taking Diazepam and Paroxetine. Tr. 216. When asked about work history, Plaintiff stated he would walk off jobs due to anxiety. Tr. 215.

On examination, Plaintiff was anxious and fidgety. Tr. 216. Speech was a bit pressured. Tr. 216. Thought processes were logical and goal oriented. Tr. 216. Dr. Walz estimated Plaintiff's intelligence as average. Tr. 217. She diagnosed Plaintiff with bipolar II disorder vs. cyclothymic disorder, social anxiety disorder, and obsessive-compulsive traits. Tr. 218. She estimated Plaintiff's GAF score at 55-60. Tr. 218. Dr. Walz noted that Plaintiff's social skills were impaired by anxiety and his obsessive thinking and ritualistic behavior would impair his ability to be an effective worker unless he was extremely comfortable in the situation. Tr. 218. She also found that Plaintiff's anxiety level and obsessive thinking would interfere with his attention, concentration, and persistence. Tr. 219.

 C. <u>Sparks Regional Medical Center</u>

On April 30, 2007, and May 23, 2007, Plaintiff was treated at Sparks Regional Medical Center for complaints of left knee pain. Tr. 314. X-rays of Plaintiff's left knee revealed mild

suprapatellar fullness, but no acute fractures or dislocations. Tr. 317. He was assessed with knee strain and given a steroid injection and anti-inflammatory medication. Tr. 314, 316. On June 29, 2008, Plaintiff was treated for low back pain/strain. Tr. 571-598. On examination, Plaintiff had normal range of motion and alignment, but exhibited tenderness in the lumbar regional bilaterally. Tr. 592. He was given a narcotic pain injection and discharged with a prescription for muscle relaxants. Tr. 593.

    D. <u>Kathleen Kralik, Ph.D.</u>

On July 16, 2007, Plaintiff saw Kathleen M. Kralik, Ph.D., for a consultative mental evaluation. Tr. 220-228. She diagnosed Plaintiff with attention-deficit/hyperactivity disorder NOS, anxiety disorder NOS (obsessive-compulsiveness, performance anxiety, and excessive self-consciousness), and personality disorder NOS (with narcissistic, histrionic, dependent, passive-aggressive, and obsessive-compulsive personality features). Tr. 226. Dr. Kralik estimated Plaintiff's GAF score at 61-70. Tr. 226. She determined Plaintiff's ability to carry out activities of daily living, communicate in an intelligible and effective manner, and cope with the typical mental/cognitive demands of basic work-like tasks was adequate. Tr. 227-228. She found some impairment in Plaintiff's ability to communicate and interact in a socially adequate manner, attend and sustain concentration, and complete work-like tasks within an acceptable time frame. Tr. 228. Dr. Kralik noted significant impairment in Plaintiff's ability to sustain persistence in completing tasks. Tr. 228. She suspected some symptom exaggeration and noted that Plaintiff's history was consistent with an ability to function occupationally if he saw it advantageous to do so. Tr. 228.

  E. <u>Agency Consultants</u>

  In a Psychiatric Review Technique Form ("PRTF") dated July 23, 2007, Jay Rankin, M.D., found that Plaintiff's impairments did not meet or equal the requirements of listings 12.02 (organic mental disorders), 12.06 (anxiety-related disorders), and 12.08 (personality disorders). Tr. 231-244. Dr. Rankin found mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. Tr. 241. In a Mental Residual Functional Capacity ("RFC") Assessment, Dr. Rankin determined Plaintiff was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision and without being distracted by others, complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Tr. 245-248. He found Plaintiff not significantly limited in all remaining work-related categories and determined Plaintiff could perform unskilled work. Tr. 247.

  F. <u>Western Arkansas Counseling and Guidance Center</u>

  On September 20, 2007, Plaintiff presented to Western Arkansas Counseling and Guidance Center ("WACGC") for treatment. Tr. 281-307. Plaintiff reported having over twenty jobs in the last six years, which he quit due to extreme anxiety. Tr. 281. He also reported obsessive-compulsive behaviors, depression, and mood problems. Tr. 281. Plaintiff was not taking any medication. Tr. 283.

On examination, Plaintiff was in severe distress and was tearful at times. Tr. 283. Speech was somewhat pressured and Plaintiff's mood would go from being depressed to overly cheerful. Tr. 283. Thought processes were quite tangential and Plaintiff demonstrated some difficulty with attention and concentration. Tr. 283. Plaintiff's memory was intact, but his insight was fair and judgment was poor to fair. Tr. 283. Sharon Strawn, a clinical social worker, estimated Plaintiff's intelligence as average to above average. Tr. 283. She diagnosed with bipolar II disorder, social phobia, rule out obsessive-compulsive disorder, and rule out avoidant personality disorder. Tr. 284. She estimated Plaintiff's GAF score at 50. Tr. 284. Ms. Strawn noted some pathological personality features and narcissism. Tr. 283. She gave Plaintiff a fair prognosis, noting that Plaintiff had not sought consistent treatment. Tr. 284.

Plaintiff's treatment plan included individual therapy and medication management. Tr. 287. Bethany Tosh, an advanced nurse practitioner, prescribed Geodon. Tr. 285-287. On October 18, 2007, Plaintiff reported negative side effects from Geodon and discontinued the medication. Tr. 290. On November 27, 2007, Plaintiff stated that he was doing well and had begun attending church services and Bible class without any difficulties with anxiety. Tr. 292. He also considered becoming involved in ministry work. Tr. 292. Ms. Strawn noted improvement in Plaintiff's thought patterns and motivation. Tr. 292. However, on December 11, 2007, Plaintiff reported increased depression, but he was still able to attend local events without anxious thoughts. Tr. 293. He stated did not want to take medication. Tr. 293.

By January 2008, Plaintiff's condition has regressed and he was feeling more depressed and anxious. Tr. 295. Ms. Strawn recommended that Plaintiff attend the day treatment program. Tr. 295. In February, Plaintiff agreed to try Ability and Klonopin, but stopped taking his medication

after a few days due to nausea. Tr. 296-297, 299. Ms. Strawn noted that Plaintiff was showing signs of beginning a hypomanic phase. Tr. 297. In April 2008, Ms. Strawn noted that Plaintiff had made minimal progress in treatment, but had agreed to attend day services in the summer. Tr. 298. In June, Plaintiff stated he was doing much better, but continued to have wide variation in mood. Tr. 337. Plaintiff was given a GAF score of 50. Tr. 301. Plaintiff did not take his medication as prescribed and had not attended therapy regularly. Tr. 303.

    G. <u>P. Craig Stites, M.D.</u>

On February 26, 2008, Plaintiff presented to Arkansas/Oklahoma Dermatology Center with complaints of dermatitis. Tr. 319-322, 601-604. Plaintiff admitted to obsessively washing his hands multiple times daily. Tr. 322. P. Craig Stites, M.D., noted scattered deep-seeded vesicles on the palmar hands bilaterally with some erythematous, scaly patches on the left medial upper arm. Tr. 322. Dr. Stites assessed Plaintiff with pompholyx/chronic hand dermatitis, which he treated with antibiotics and Elocon cream. Tr. 322. Dr. Stites instructed Plaintiff to avoid irritants, vinyl gloves, and wet contact. Tr. 322. At a follow-up appointment, Plaintiff stated that Elocon really helped, but he discontinued it over worries about long-term side effects. Tr. 321. Dr. Stites placed Plaintiff back on Elocon and reviewed the need for mild skin care, avoiding wet contact, and protecting the hands. Tr. 321. In March 2010, Plaintiff was treated for a flare-up of his dermatitis. Tr. 601-604.

On July 12, 2008, Dr. Stites completed an Attending Physician's Statement, in which he determined Plaintiff's symptoms were severe enough to interfere with his attention and concentration and ability to tolerate work stress. Tr. 280. He determined Plaintiff would need to take unscheduled breaks during an eight-hour shift and would miss about four workdays per month. Tr. 280. Dr. Stites noted that Plaintiff could perform simple grasping and pushing and pulling with both hands,

but could not perform fine manipulation. Tr. 280. He expected a fundamental change for the better in the future. Tr. 280. On February 15, 2010, Dr. Stites completed a second Attending Physician's Statement, in which he determined Plaintiff would not need unscheduled breaks during an eight-hour work shift and would miss about three workdays per month. Tr. 606. He stated he did not expect a fundamental or marked change for the better in the future, as Plaintiff's skin condition tended to wax and wane and could cause severe impairment when flaring. Tr. 606.

    H.   James Schmitz, D.O.

Plaintiff was treated by James Schmitz, D.O., at Charleston Clinic for the following complaints: eczema/dermatitis, insomnia, anxiety/panic attacks, depression, hand pain, hematochezia, nausea, dizziness, allergies, low back and left leg pain, neck and shoulder pain, hypertension, and sinusitis. Tr. 196-204, 522-551, 553-560. Plaintiff was prescribed Celexa, Trazodone, Seroquel, and Xanax for anxiety and depression, and pain and anti-inflammatory medication for back and neck pain. Tr. 197-200, 530-536, 553-554, 556. On March 4, 2008, Plaintiff was assessed with cervical strain after he injured himself playing basketball. Tr. 536. Dr. Schmitz recommended conservative treatment with heat/ice, muscle relaxers, and anti-inflammatory medication. Tr. 536. On May 8, 2008, Dr. Schmitz noted a radicular pain component in Plaintiff's left hip and leg. Tr. 533. On June 26, 2008, he noted tenderness over the lower lumbar area and paravertebral muscles. Tr. 532. Dr. Schmitz diagnosed Plaintiff with a herniated disc and recommended physical therapy and increased activity. Tr. 532. He also prescribed pain medication. Tr. 532.

On August 14, 2008, Dr. Schmitz completed an Attending Physician's Statement, in which he determined Plaintiff would need to take unscheduled breaks during an eight-hour shift. Tr. 325.

Dr. Schmitz found that Plaintiff was capable of operating foot controls with both feet and performing simple grasping, pushing and pulling, and fine manipulation with both hands. Tr. 325. However, he determined Plaintiff was not capable of working eight hours a day for forty hours a week and did not expect marked improvement in the future. Tr. 325.

On February 11, 2010, Timbi West, APN, completed a Supplemental Attending Physician's Statement, in which she noted Plaintiff's diagnoses of anxiety, insomnia, and dermatitis. Tr. 519-520. Ms. West determined Plaintiff could perform simple grasping and pushing and pulling with both hands, but could not perform fine manipulation. Tr. 519. She stated that Plaintiff suffers from a chronic dermatitis condition that is complicated by anxiety and obsessive-compulsive disorder. Tr. 519. In Ms. West's opinion, Plaintiff would be unable to maintain gainful employment due to his anxiety. Tr. 519. She further stated that Plaintiff had been seen at Charleston Clinic eleven times for anxiety-related complaints. Tr. 519.

On July 22, 2010, Dr. Schmitz diagnosed Plaintiff with low back pain associated with disc herniations. Tr. 553. An MRI of Plaintiff's lumbar spine revealed diffuse bulging annuli with disc herniations at L4-5 and L5-S1. Tr. 559, 565. Dr. Schmitz instructed Plaintiff to avoid lifting over fifteen pounds. Tr. 553. He also referred Plaintiff to counseling for anxiety and depression. Tr. 553-554.

I. River Valley Musculoskeletal Center

Dr. Schmitz referred Plaintiff to River Valley Musculoskeletal Center for evaluation and treatment of his chronic neck, low back, left hip, and left leg pain. Tr. 348-354. On May 27, 2008, Thomas E. Cheyne, M.D., noted tenderness in the mid and left lower back and the posterior aspect of the neck. Tr. 350. Range of motion was limited by 20% in the head and neck in all directions.

Tr. 350. Plaintiff was able to bend to touch below his knees and walk on his heels and toes without difficulty. Tr. 350. Sensation and motor function were normal in the upper and lower extremities. Tr. 350. Straight leg raise was strongly positive on the left and negative on the right. Tr. 350. X-rays of Plaintiff's cervical and lumbar spine were essentially normal, but x-rays of Plaintiff's pelvis revealed mild to moderate degenerative arthritis of the hips. Tr. 351. An MRI of Plaintiff's lumbar spine revealed a small central bulge or protrusion at L4-5 and a small central disc protrusion with slight caudal extension and eccentric prominence to the left at L5-S1. Tr. 348-349. Dr. Cheyne believed this was the source of Plaintiff's low back and left leg pain. Tr. 348. He referred Plaintiff for physical therapy and prescribed Mobic and lumbar epidural steroid injections. Tr. 348.

### III. Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV.     ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since September 1, 2006, the alleged onset date. Tr. 360. At step two, the ALJ found Plaintiff suffered from back disorder, organic brain syndrome, chronic hand dermatitis, obesity, and mood disorder (anxiety), all of which were considered severe impairments under the Act. Tr. 360-361. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 361-363.

At step four, the ALJ found Plaintiff had the RFC to lift/carry twenty pounds occasionally and ten pounds frequently, sit/stand/walk for about six hours during an eight-hour workday, frequently handle and finger, occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds or have concentrated exposure to wetness. Tr. 363-367. Mentally, the ALJ determined Plaintiff could understand, remember, and carry out simple, routine, and repetitive tasks and respond appropriately to supervisors and usual work situations, but could have only occasional contact with coworkers and no contact with the general public. Tr. 363-367. He also determined Plaintiff could perform low-stress work (defined as occasional decision-making and occasional changes in work place settings). Tr. 363-367.

With these limitations, the ALJ found Plaintiff could not perform his past relevant work. Tr. 367. However, after consulting a vocational expert, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[1] Accordingly, the ALJ determined Plaintiff was not under a disability from September 1, 2006, the alleged onset date, through November 19, 2010, the date of the decision. Tr. 368.

**V.      Discussion**

On appeal, Plaintiff contends the ALJ erred by: (1) improperly evaluating opinions of two treating physicians; (2) improperly determining his RFC; (3) and dismissing his subjective complaints. *See* Pl.'s Br. 8-19. For the following reasons, the court finds that substantial evidence does not support the ALJ's decision.

---

[1] The ALJ determined Plaintiff could perform the requirements of representative light, unskilled occupations such as housekeeper, of which there are 4000 jobs regionally and 409,000 jobs nationally, mail clerk, of which there are 500 jobs regionally and 79,000 jobs nationally, and plastics worker, of which there are 1300 jobs regionally and 81,000 jobs nationally. Tr. 367-368, 406-408.

The ALJ improperly dismissed the opinions of Drs. Schmitz and Stites. A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a clamant's record. *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009); 20 C.F.R. § 404.1527(d)(2). The record must be evaluated as a whole to determine whether the treating physician's opinion should be controlling. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). A treating physician's evaluation may be disregarded where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013). In any case, an ALJ must always "give good reasons" for the weight afforded to the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2).

Regarding Dr. Schmitz's Attending Physician's Statement, the ALJ stated:

> The claimant's back conditions have not been shown to be of such severity that the claimant is not able to exercise or play basketball when so inclined in contrast to the statement provided by Dr. Schmitz on August 14, 2008, when he stated that the claimant would not be able to work a forty hour work week as the result of low back pain related to a lumbar disc protrusion. Dr. Schmitz['s] opinion in that regard is given little weight.

Tr. 365.

Regarding Dr. Stites's Attending Physician's Statement, the ALJ stated:

> Dr. P.C. Stites['s], M.D., opinion that the claimant will miss about three days per month as the result of dermatitis of the hands is not supported by the other objective medical evidence of record and is given little weight.

Tr. 366.

The court recognizes that the ultimate issue of disability is one reserved to the Commissioner. *See Brown v. Astrue*, 611 F.3d 941, 952 (8th Cir. 2010). Furthermore, "treating physicians' opinions

are not medical opinions that should be credited when they simply state that a claimant can not be gainfully employed." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In this instance, however, the opinions of Plaintiff's treating physicians are not merely conclusory.

Dr. Schmitz was Plaintiff's primary care physician and, as such, was in the best position to assess the functional limitations resulting from Plaintiff's various impairments. The ALJ's only proffered reason for dismissing Dr. Schmitz's opinion concerning Plaintiff's back pain was that Plaintiff played basketball. Tr. 365. However, Plaintiff's records from WACGC demonstrate that his counselor instructed him to play basketball as a way to relieve his anxiety and depression symptoms. Tr. 296. Once Plaintiff actually played basketball, he injured his neck. Tr. 536. For this reason, the court finds the ALJ's minimal discussion of Dr. Schmitz's opinion to be inadequate.

Additionally, although Dr. Stites only treated Plaintiff for chronic dermatitis of the hands, he gave specific reasons for his opinion, nothing that Plaintiff's skin condition tended to wax and wane and could cause severe impairment when flaring. Tr. 606. The ALJ's one-sentence dismissal of Dr. Stites's opinion is also inadequate.

Significantly, Drs. Schmitz and Stites were the only physicians to assess Plaintiff's physical impairments. In fact, the court cannot find any evidence that a physical RFC assessment was completed at the agency level. Because Drs. Schmitz and Stites were the *only* physicians to report on Plaintiff's physical impairments, disregarding these opinions left no medical evidence in the record on the issue. *See DiMasse v. Barnhart*, 88 Fed. Appx. 956, 957 (8th Cir. 2004); *see also Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001) (reversible error for ALJ not to order consultative examination where such evaluation is necessary to make informed decision).

For the aforementioned reasons, the courts finds that substantial evidence does not support the ALJ's determination and remand is necessary for further development of the record. On remand, the ALJ should send Plaintiff for a consultative physical examination to determine the precise limitations arising from his dermatitis and back impairment. Once a proper assessment is completed, the ALJ should reassess Plaintiff's RFC and determine if he is capable of performing jobs existing in significant numbers in the national economy.

## VI.     Conclusion

Accordingly, the undersigned concludes that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). This matter should be remanded to the Commissioner for reconsideration of the issue of Plaintiff's RFC based on all relevant evidence, including medical records, opinions of treating medical personnel, and Plaintiff's description of his own limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).

IT IS SO ORDERED this 16th day of March 2012.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE